**In re Edmond G. MIRANNE Sr., Debtor.**

**Edmond G. MIRANNE Sr., Appellant,**

**v.**

**FIRST FINANCIAL BANK, F.S.B., and Mrs. Bernice M. Dohm, Appellees.**

**Bankruptcy C No. 84–2143–THK.
Civ. A. No. 88–1481.**

United States District Court,
E.D. Louisiana.

June 10, 1988.

---

The Court has become well familiar with the present controversy, which concerns the failure of the Bayou Plaza Hotel. At this Court's count, the controversy has now come before this Court at least twenty-one times.[1] Once again, the Court will attempt to add a modicum of meaning to the morass.

Edmond G. Miranne Jr., New Orleans, La., for appellant.

Donald A. Meyer, Betty F. Mullin, Shushan, Meyer, Jackson, McPherson & Herzog, New Orleans, La., for First Financial Bank.

Marc G. Shachat, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for Mrs. Dohm.

## OPINION

CHARLES SCHWARTZ, Jr., District Judge.

This matter came before the Court for hearing on May 25, 1988. Edmond G. Miranne Sr. appeals the Bankruptcy Court's order of March 14, 1988 granting the Joint Motion of First Financial Bank, F.S.B. and Mrs. Bernice Dohm to withdraw funds held in the [Bankruptcy] Court's registry, overruling Edmond G. Miranne Sr.'s objections thereto, and denying his motion [for the Bankruptcy Court] to abstain. This Court now AFFIRMS and REMANDS.

I.

### Before the Flood

Sometime prior to 1977, a partnership (the Bridgeman–O'Keefe–Miranne Metairie Tower Partnership) was formed to develop and own the Metairie Tower Apartments in Metairie, Louisiana. Among the general partners was Edmond G. Miranne Sr. ("Miranne Sr."). Admitted as a limited partner was Mrs. Bernice M. Dohm.

In September 1981, Miranne Sr. sold his partnership interest to entities owned by New Orleans real estate developers Darryl Berger and David Burrus. In return for his partnership interest, Miranne Sr. received a $1,600,000 promissory note executed in his favor by Apartment Housing Corporation, one of the entities owned by Berger and Burrus.

In June 1982, Mrs. Dohm brought suit in Louisiana state court against the partnership, the original general partners including Miranne Sr., and the developers' entities.[2] She sought an accounting and

---

1. The controversy has come before the Court on contradictory motions in six civil actions in addition to the instant civil action: once in Civ. 87–5334 (affirming Bankruptcy order denying contempt motion against the Bank and its counsel); twice in Civ. 87–3697 (affirming Bankruptcy Judgment ordering Miranne Sr. and Jr. to pay trustee $12,600 as rent; dismissing the Mirannes' motion for reconsideration); once in Civ. 86–2457 (affirming Bankruptcy order "reinstating automatic stay"); twice in Civ. 86–3428 (denying motion for stay of sale pending appeal; affirming Bankruptcy order authorizing trustee's sale of hotel); once in Civ. 86–3607 (affirming Bankruptcy order ratifying lease and denying stay of Bankruptcy order authorizing sale of hotel); and at least thirteen times in Civ. 84–6127 (the RICO action).

   It is perhaps significant and at least noteworthy that not a single of these Bankruptcy orders has been reversed.

2. In connection with the instant appeal, Miranne Sr. has submitted two depositions from this state court case, though with little explanation of their relevancy. *See* Exhs. A–B to Appellant's Brief. Because these depositions were not offered before the Bankruptcy Court, this Court must strike them from its consideration on this appeal. *In re GHR Energy Corp.,* 791 F.2d 1200, 1201–02 (5th Cir.1986) (per curiam) ("this court is barred from considering filings outside the record on appeal, and attachments to briefs do not suffice"); *In re Tiana Queen Motel, Inc.,* 34 B.R. 357, 361 (S.D.N.Y.1983), *aff'd in part and rev'd in part on other grounds,* 749 F.2d 146 (2d Cir.1984), *cert. denied sub nom. Demarco v. A. Illum Hansen, Inc.,* 471 U.S. 1138, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985); *see also Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 295–96 (5th Cir.1987) (depositions never presented in any form to the trial court will not be considered by the appellate court).

damages from the alleged fraudulent sale. Miranne Sr.'s promissory note became subject to the suit. She has since settled with all defendants except Miranne Sr.

### Remembrance of Things Past

Sometime prior to 1984, Miranne Sr. and his son Edmond G. Miranne Jr. ("Miranne Jr.") formed Tulane Hotel Investors Corporation and in turn formed Tulane Hotel Investors Limited Partnership ("the Partnership"), a Louisiana partnership in commendam. The corporation became the general partner and the two Mirannes, along with a handful of other individuals, became the limited partners.

In September 1983, First Financial Bank ("the Bank") lent the Partnership $10,000,-000 to buy and renovate the Bayou Plaza Hotel in New Orleans. To secure the loan, the Partnership granted the Bank, among other things, a mortgage on the hotel. Miranne Sr. and Miranne Jr. each personally guaranteed the entire loan. To secure his guarantee, Miranne Sr. pledged collateral including the principal proceeds on his promissory note from Apartment Housing Corporation; he did not pledge the interest proceeds on the note. At the time it was pledged to the Bank, the note was still subject to Mrs. Dohm's state court suit.

Soon thereafter like much in New Orleans' year of the World's Fair, however, the Partnership began to fail. In July 1984, the Partnership went into default on its loan from the Bank. In October 1984, Miranne Sr., Miranne Jr., and the Partnership all filed voluntary petitions to commence Chapter 11 bankruptcy cases. All three debtors initially acted as debtors-in-possession (i.e., no separate trustees were initially appointed).

Because of the competing claims of the Bank and Mrs. Dohm, Apartment Housing Corporation deposited the final proceeds on Miranne Sr.'s promissory note, totalling $448,000 ($400,000 of principal funds plus $48,000 of interest thereon), into the registry of the Bankruptcy Court.

In December 1984, the Bank moved to modify the automatic bankruptcy stay, see 11 U.S.C. § 362, in the three bankruptcy cases; the Bank sought (1) recognition of its rights as pledgee of the note proceeds and (2) permission to sue the Partnership in state court in order to foreclose upon the mortgage on the hotel property. On March 21, 1985, in Findings of Fact and Conclusions of Law and a separate Judgment, the Bankruptcy Court granted the Bank's motion on both points.[3] Concerning the note proceeds, the Bankruptcy Court wrote the following:

5. The sum of FOUR HUNDRED FORTY–EIGHT THOUSAND AND NO/100THS DOLLARS ($448,000.00) currently held in the Court's registry and representing the final installment paid on the Apartment Housing Corporation Promissory Note in favor of Edmond G. Miranne [Sr.] ... shall be held and invested by the Court until such time as there is an adjudication of the conflicting claims of Edmond G. Miranne and Mrs. Bernice Dohm in the pending suit, Case Number 82–9510, Division "B" on the docket of the Civil District Court for Orleans Parish entitled "Mrs. Bernice M. Dohm versus Michael H. O'Keefe, et al". The Court recognizes that as between First Financial and Edmond G. Miranne, First Financial holds a pledge in the principal amount of FOUR HUNDRED THOUSAND AND NO/100THS ($400,-000.00). The interest amount of FORTY–EIGHT THOUSAND AND NO/100THS ($48,000.00) is property of the estate of Edmond G. Miranne, and not subject to the pledge. Cumulated interest earned on the principal amount of FOUR HUNDRED THOUSAND AND NO/100THS ($400,000.00) after the deposit into the Court's registry shall be subject to the pledge in favor of First Financial. Cumulated interest earned on the interest amount of FORTY–EIGHT

---

**3.** Before the Court was also a "Motion by Parties of Interest in Collateral" filed by Mary Anna Rivet (Mrs. Miranne Sr.) and Minna Ree Winer (Mrs. Miranne Jr.). Denying their motion, the

Court held that the two had no right, title, or interest in or to the $400,000 principal proceeds from the promissory note. See Conclusion of Law ¶ 6, at 9–10; Judgment at 3.

THOUSAND AND NO/100THS ($48,-000.00) after the Deposit into the Court's registry shall be property of the estate of Edmond G. Miranne and not subject to the pledge of First Financial.

Conclusion of Law ¶ 5, at 8–9; *see also* Judgment at 2–3. No appeal was ever taken from this ruling.

With the Bankruptcy Court's ruling on the foreclosure, the Bank filed an executory process (foreclosure) suit in Louisiana state court. Alleging fraud by the Bank, the Partnership (still being run by the Mirannes) then sought and obtained a preliminary injunction against the foreclosure. The state court ordered that:

> ... the said Rule for Preliminary Injunction be made absolute and accordingly a Writ of Preliminary Injunction issue herein in favor of the Defendant, TULANE HOTEL INVESTORS LIMITED PARTNERSHIP, A LOUISIANA PARTNERSHIP IN· COMMENDAM, and against the Plaintiff, FIRST FINANCIAL BANK, F.S.B., enjoining, restraining, and/or prohibiting Plaintiff or anyone acting at its direction from proceeding with any sale, alienation or application of any and/or all collateral, movable or immovable, held by the Plaintiff under any security instruments, or the Civil Sheriff for the Parish of Orleans or anyone acting at his direction from proceeding with the sale of the following described property:
>
>> [The hotel property and various leasehold interests therein, leases thereto, and movables and inventories thereon are described]
>
> which was seized pursuant to an Order of Executory Process issued on the 16th day of May, 1985, in the above entitled and numbered matter.

*First Financial Bank, F.S.B. v. Tulane Hotel Investors Limited Partnership,* Judgment on Rule for Preliminary Injunction (Civ.Dist.Ct.Orleans Parish Aug. 14, 1985) (No. 85–8279 "K").[4]

Subsequently, in December 1985, on the Bank's motion, the Partnership's bankruptcy case was converted from a Chapter 11 case to a Chapter 7 case, partially because of the Mirannes' interference with the orderly administration of the Partnership's bankruptcy case. The Bankruptcy Court appointed Jean Hebert Turner to be the Partnership's bankruptcy trustee.

Then, on February 13, 1986, on Miranne Sr.'s unopposed motion and after a hearing, the Bankruptcy Court ordered his bankruptcy case dismissed "with the reservation that disposition of funds presently in the Registry of the Court be made in a contradictory manner." No appeal was ever taken from this ruling.

Meanwhile, on February 28, 1986, the trustee moved to "reinstate the automatic stay under [11 U.S.C.] section 362" in the Partnership's bankruptcy case, primarily in order to prohibit the Mirannes (and the Partnership) from pursuing state court proceedings affecting the Partnership's bankruptcy estate. By minute entry of March 6, 1986 and by further written order of March 20, 1986, the Bankruptcy Court granted the motion. The Mirannes and three other limited partners[5] appealed to this Court.

On April 18, 1986, the trustee then applied to the Bankruptcy Court for authorization to sell the hotel property, the Partnership's only significant asset. On June 17, 1986, the Bankruptcy Court granted approval. The Partnership appealed this order. Just before the scheduled sale on August 11, 1986, the Partnership moved in the Bankruptcy Court for a stay of the sale

---

**4.** The Bank then sought devolutive appeals to the Louisiana Court of Appeal for the Fourth Circuit, but the Bank's writs were refused; the appellate court explained with one sentence: "Applicant's remedy is to bring this matter to a hearing on the permanent injunction." *First Financial Bank, F.S.B. v. Tulane Hotel Investors Ltd. etc.,* Order (La.App. 4th Cir. Oct. 7, 1985) (No. C 4483). Apparently, however, the Partnership abandoned its efforts to obtain a permanent injunction. *See In re Tulane Hotel Investors Limited Partnership,* 68 B.R. 145, 148 (E.D. La.1986).

**5.** While the notice of appeal listed the appellants as these five persons only, all subsequent pleadings by all parties in this Court referred to the Partnership as being the sole appellant.

pending the appeal. On August 4, 1986, the Bankruptcy Court denied this last motion, and the Partnership once again appealed. This Court and the Fifth Circuit each denied similar stay motions. *See In re Tulane Hotel Investors Limited Partnership,* 68 B.R. 145, 147–50 (E.D.La.1986); Order (5th Cir. filed Aug. 11, 1986) (No. 86–3586).

On November 13, 1986, after extensive briefing, this Court affirmed the three bankruptcy appeals. 68 B.R. 145. The Mirannes and Tulane Hotel Investors Corporation appealed to the Fifth Circuit, and on June 1, 1987, the appeal was dismissed as moot. 820 F.2d 1221; *see also* Order (5th Cir. filed Mar. 9, 1987) (No. 86–3836) (dismissing appeal on the latter two Bankruptcy orders because the hotel had been sold). The Partnership then petitioned for a writ of certiorari, which the Supreme Court denied on October 5, 1987. *Tulane Hotel Investors Limited Partnership v. First Financial Bank,* —— U.S. ——, 108 S.Ct. 144, 98 L.Ed.2d 100.

### In the News

On August 26, 1987, the Bank and Mrs. Dohm settled their competing claims to the principal proceeds on the note (*viz.,* the $400,000 principal in the registry plus the interest accumulated thereon by the registry); subject to the approval of the Bankruptcy Court, the Bank would receive $380,000 plus accumulated interest thereon and Mrs. Dohm would receive $20,000 plus accumulated interest thereon.

On August 28, 1987, the Bank and Mrs. Dohm filed a joint motion to withdraw these funds. On November 4, 1987, Miranne Sr. filed an objection to this motion and also filed a motion [for the Bankruptcy Court] to abstain. The Bankruptcy Court held a hearing on the motions on November 12, 1987.

At the hearing, Miranne Sr.'s attorney, Miranne Jr., sought testimony from counsel for Mrs. Dohm, James A. Babst, who had been served with a subpoena duces tecum. Mr. Babst acknowledged that Mrs. Dohm had no court judgment or order for Miranne Sr. to pay Mrs. Dohm any sum of money; over Miranne Jr.'s objections, however, he did produce Mrs. Dohm's partnership agreement, as amended, for the Metairie Tower partnership; according to Mr. Babst, this agreement established Mrs. Dohm's claim against Miranne Sr.

On March 14, 1988, the Bankruptcy Court issued an Order and a Reasons for Order granting the joint motion of the Bank and Mrs. Dohm, overruling Miranne Sr.'s objections, and denying Miranne Sr.'s motion. The Bankruptcy Court tersely explained its ruling:

> The Bank and Dohm have now entered into a settlement, thereby resolving their competing claims. Since the Court previously determined the Bank's right to the funds, and since jurisdiction was retained specifically until resolution of these claims, it is not necessary for the Court to abstain from this matter. An order will be entered granting the joint motion of the Bank and Dohm for release of the $400,000.00 plus interest thereon.
>
> A separate order has been entered retaining the $48,000.00 plus interest thereon until further resolution of the competing claims between the Debtor [Miranne Sr.] and Dohm.

Reasons for Order at 2–3.

It is from this order that Miranne Sr. appeals.

### II.

Miranne Sr. raises two points on appeal. First, he argues that the Bankruptcy Court must follow, or at least must abstain because of, the state court judgment of August 14, 1985 granting the Partnership a preliminary injunction against the Bank. Second, he argues that Mrs. Dohm has no right to the funds inasmuch as she has no judgment against him for any sum of money. Because the state court judgment does not conflict with, or even concern, the Bankruptcy order now appealed from, his argument fails on both points.

▬ First, the Bankruptcy Court has the power to retain jurisdiction over the funds in its registry, and over their distribution, once Miranne Sr.'s bankruptcy case

was dismissed.[6] Section 349(b) of the Bankruptcy Code specifically contemplates that return of *all* estate property to the debtor is not required in every dismissal. *See* 11 U.S.C. § 349(b) ("Unless the court, for cause, orders otherwise ..."). In dismissing Miranne Sr.'s case, the Bankruptcy Court expressly retained jurisdiction over the funds in its registry—presumably because the Bankruptcy Court, in its discretion and with no opposition, determined that a return of these funds directly to Miranne Sr. would not adequately consider the best interests of two of Miranne Sr.'s principal creditors, the Bank and Mrs. Dohm. *See id.* § 1112(b) (bankruptcy court may convert a Chapter 11 case to a Chapter 7 case or dismiss the case, "whichever is in the best interest of *creditors* and the estate"). The Bankruptcy Court's latest order merely gives ultimate effect to its now-final March 1985 order determining the Bank's superior interest over Miranne Sr. to the $400,000–plus-interest in the registry. *See In re Franklin*, 802 F.2d 324 (9th Cir.1986) (bankruptcy court had subject matter jurisdiction, after dismissal of a bankruptcy case, to construe and effectuate an order made prior the dismissal).

■ Second, Miranne Sr. (in addition to the Partnership and all the partners thereto) lacks standing concerning the state preliminary injunction. The sole named parties in the state action are the Bank and the Partnership; in that action, the Bank did not sue Miranne Sr. or Jr. or any other partner to the Partnership. Further, because the Partnership is no longer a debtor-in-possession, in other words, because the Partnership's estate is now held and managed by an independent trustee, the debtor Partnership itself is no longer even a proper party to that action. *Tulane Hotel Investors Limited Partnership v. First Financial Bank,* Order and Reasons at 2 (E.D.La. Aug. 22, 1986) (Civ. No. 84–6127) [available on WESTLAW, 1986 WL 20874] (citing *Vreugdenhil v. Hoekstra,* 773 F.2d 213, 215 (8th Cir.1985)) (holding the trustee

to be the sole plaintiff party-in-interest). The sole party who may now assert that the Bank is violating the preliminary injunction, then, is the Partnership's trustee. *See Tulane Hotel v. FFB,* 819 F.2d 1140, Order at 3 (5th Cir.1987) (affirming order denying motion by Mirannes to intervene in the RICO action). She, like the Bank, however, appears now to want to proceed solely in federal court.

■ Third, as a matter of state law, the state preliminary injunction does not purport to concern, much less to enjoin, the Bank's actions seeking to recover the note proceeds in the Bankruptcy Court. The injunction does not concern collateral from any person (e.g., Miranne Sr.), only collateral from the Partnership itself. Further, the injunction does not concern all collateral from the Partnership, only collateral concerning the hotel property. Miranne attributes too much significance to the phrase "all collateral ... held by the Plaintiff." Under his interpretation, the Sheriff would be barred merely from selling the hotel property, but the Bank would be barred from executing or transferring *any* collateral the Bank held in connection with *any* loan with *any* person; Miranne reads the injunction as if the relationship between the Bank and the Sheriff were disjunctive—as if the property description only related to those acts that the Sheriff was barred from performing. This interpretation is, in a word, unacceptable. Reading the injunction as a whole, it is evident that the property description applies to both the Sheriff and the Bank, specifically, that the Bank is barred from actions concerning "all collateral ... held by the [Bank] under any security instruments ... of the following described property." While the wording of the injunction is admittedly awkward, Miranne's interpretation does not follow as the natural, reasonable interpretation to be given. Because the injunction merely prohibited the Bank from foreclosing on the hotel proper-

---

**6.** While the Court has found it difficult to say that the Mirannes ever concede to legal arguments in their disfavor, the Court may at least note that their legal arguments, that the Bank-

ruptcy Court should abstain, acknowledges the Bankruptcy Court's jurisdiction. For a court cannot abstain unless it has jurisdiction.

ty, the injunction is moot, for the trustee has since sold the property. *Cf. In re Tulane Hotel,* Order (5th Cir. Mar. 9, 1987) (dismissing appeal concerning the sale of the property).

■ Fourth, even if the state preliminary injunction purported under state law to enjoin the Bank's actions concerning the note proceeds, the state court would have lacked the authority to enter such an injunction, for the Bankruptcy Court's partial lifting of the automatic bankruptcy stay was not so broad as to permit state court proceedings on this issue. While the proper interpretation of the injunction is a state law question ultimately for the state court to decide, the issue of the extent to which the bankruptcy stay was lifted is a federal law question to be determined by the Bankruptcy Court, subject only to appellate review by this Court (and, if further appealed by the Fifth Circuit and the Supreme Court). Any state court injunction beyond what the Bankruptcy Court properly permitted would violate the Supremacy Clause of the U.S. Constitution.

Important to consider is the Fifth Circuit's explanation when it dismissed the appeal from the March 1986 Bankruptcy order "reinstating the automatic stay." The appeal was held to be moot because the automatic stay had not been lifted to the extent the Mirannes' had argued; in other words, the automatic stay had never been lifted as to the Mirannes and others so that the Bankruptcy Court had nothing to reinstate as to them. 820 F.2d 1221. From this analysis comes the conclusion that the lifting was, as its text attests, narrow in scope. This Court now explicitly states what the Bankruptcy Court implicitly held: the March 1985 modification of the bankruptcy stay did not grant the Mirannes, the Bank, or anyone else permission to pursue litigation on the promissory note in any court other than the Bankruptcy Court.

■ Fifth, Miranne Sr.'s present opposition is an impermissible collateral attack on

the Bankruptcy order of March 21, 1985 recognizing the Bank's rights over Miranne Sr.'s rights to principal proceeds to the Note in the Bankruptcy Court.[7] As this Court has previously noted, 68 B.R. at 169, this Bankruptcy order is now final inasmuch as no timely appeal was ever taken from this conclusive determination of the rights between the Bank and Miranne Sr. *See* 28 U.S.C. § 158(a), (c); Bankr.R. 8002(a); *In re Abdallah,* 778 F.2d 75, 77 (1st Cir.1985); *see also In re Bad Bubba Racing Products, Inc.,* 609 F.2d 815, 816 (5th Cir.1980) (per curiam) (same for former Bankr. Rules 801 and 802). If Miranne Sr. had proper objections to the Bank's rights to the note proceeds in the Bankruptcy registry, its time to object was in early 1985 when that issue was before the Bankruptcy Court; if Miranne Sr. believed that the Bankruptcy Court erred in its ruling of March 21, 1985, his remedy was to appeal to this Court. While this Court is fully aware of Miranne Sr.'s position that the Bank committed fraud against him in connection with his pledging the note as collateral to the Bank's loan to the Partnership, this Court now lacks jurisdiction to address this fraud defense to the Bank's rights to the note; whether he failed to raise this fraud defense back in 1985 or whether he raised it but the Bankruptcy Court improperly considered it, the time has past for this Court to remedy any such alleged failure or error.

■ Finally, because the arguments against the Bank's rights to the note proceeds fail, the arguments against Mrs. Dohm's rights to the same proceeds must necessarily fail as well. It was adjudged in March 1985 that the Bank's rights to $400,-000 of the note proceeds were wholly superior to Miranne Sr.'s rights thereto. Mrs. Dohm remains a creditor to Miranne Sr. with a claim—albeit an unliquidated, disputed claim—to these same note proceeds. When the Bankruptcy Court dismissed Miranne Sr.'s bankruptcy case, the sole issues remaining for the Bankruptcy Court in Mir-

---

7. This Court questions, but need not determine, whether Miranne Sr.'s opposition is also an impermissible collateral attack on the Bankruptcy

order of February 13, 1986 reserving jurisdiction over the proper distribution of the note proceeds in the Bankruptcy Court.

anne Sr.'s case were (1) who between Miranne Sr. and Mrs. Dohm had what rights to the $48,000–plus-interest and (2) who between the Bank and Mrs. Dohm had what rights to the $400,000–plus-interest. The Bank and Mrs. Dohm have now settled the second issue. How the Bank and Mrs. Dohm may choose to settle their competing rights to this money is solely for those two to decide. They have decided on a figure agreeable to the two; the Bankruptcy Court, thus, has no proper reason to keep from distributing the $400,000–plus-interest to the Bank and Mrs. Dohm, per their agreement.

In sum, Miranne Sr.'s arguments evince a fundamental misunderstanding of the facts and the applicable law. Indeed, his appeal borders on being frivolous.

The Court is not blind to the Mirannes' position that the Bank committed fraud against the Partnership and thus ultimately against them. Whether their allegations are real or imaginary—correct, mistaken, or intentionally false—will be determined by a jury before this Court in the related RICO action, Civil Action 84–6127, now being prosecuted by the Partnership's trustee.

### III.

For the foregoing reasons, the Court AFFIRMS the Bankruptcy Court's order of March 14, 1988 and REMANDS the matter to the Bankruptcy Court so that the Bank and Mrs. Dohm may withdraw from the registry of the Bankruptcy Court the sum of $400,000 plus interest accrued from date of deposit. The Clerk of Court is hereby directed to enter judgment accordingly, taxing all costs of appeal against Miranne Sr.