In re SORRY CHARLIE'S OF UPPER ST. CLAIR, INC., Debtor.

Stanley G. MAKOROFF, Trustee for Sorry Charlie's of Upper St. Clair, Inc., Plaintiff,

v.

SORRY CHARLIE'S OF UPPER ST. CLAIR, INC.; H.A.C.; Thomas Hartman; Ralph A. Aiello; Jared Cooper; Commonwealth of Pennsylvania, Department of Revenue; Pennsylvania Liquor Control Board; USC Enterprises, Inc., Elias J. Hakim, Jr. and Janet R. Hakim, Defendants.

Bankruptcy No. 86–2540.
Adv. No. 88–0368.

United States Bankruptcy Court, W.D. Pennsylvania.

May 22, 1989.

Donald P. Tarosky, Greensburg, Pa.

Mark L. Unatin, Pittsburgh, Pa.

Michael M. Mullen, Jr., Pittsburgh, Pa.

Mary Reitmeyer, Pittsburgh, Pa.

John A. Bacharach, Pittsburgh, Pa.

Andrew Yingling, Commonwealth Land Title, Pittsburgh, Pa.

Joseph D. Talarico, Pittsburgh, Pa.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is the Trustee's *Complaint For Turnover Of Property* and Defendants' Responses thereto. Specifically, the Trustee seeks an Order of this Court determining that a particular liquor license was estate property and therefore, upon its sale, the proceeds thereof also became estate property. The Commonwealth of Pennsylvania, Department of Revenue ("Commonwealth") asserts that the liquor license belonged to a separate and distinct entity, known as H.A.C., a partnership, ("H.A.C."); and that through H.A.C. the Commonwealth had a lien on the license and subsequent proceeds. Ralph Aiello ("Aiello"), one of the partners, argues similarly that the license belonged to H.A.C., and that any proceeds over and above the sum owing to the Commonwealth should be transferred to the partnership.

A hearing was held at which substantial revealing and damaging testimony was uncovered. The parties have submitted briefs on certain limited issues. However, based on this Court's review of the nefarious facts in this adversary proceeding and the bankruptcy case as a whole, we are compelled to take some rather extraordinary measures.

We find that the filing of this Debtor's original bankruptcy petition was and continues to be a ruse, created for less than reputable purposes. We also believe that the machinations concocted by certain of the principals in this case have worked a fraud upon many parties, including general unsecured creditors and the Commonwealth. Therefore, an Order will be entered in conjunction with this Opinion, directing that this bankruptcy case be dis-

Donald R. Calaiaro, Andrew N. Farley, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for debtor.

Stanley G. Makoroff, trustee, Stephen J. Laidhold, Sable, Makoroff & Libenson, Pittsburgh, Pa., for trustee.

Philip E. Beard, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for defendant/Ralph A. Aiello.

Robert C. Edmundson, Sr. Deputy, Atty. Gen., Office of Atty. Gen., Pittsburgh, Pa.

Deborah C. Phillips, Unemployment Compensation, Pittsburgh, Pa.

Stephen I. Goldring, Asst. U.S. Trustee, Pittsburgh, Pa.

Louis A. Caputo, Pittsburgh, Pa.

missed for cause shown, and that pursuant to § 349(b) of the Bankruptcy Code, for cause shown, the Trustee will be ordered to transmit the funds he now holds to the Court's Registry. The Clerk of Court will be directed to pay the debt owing to the Commonwealth and to retain the remainder until we are able to determine the appropriate distribution thereof. Notice of this dismissal, and of the resultant Registry fund, will be served upon all creditors and parties requesting notices.

## FACTS

On February 2, 1984 a partnership agreement was executed by Thomas E. Hartman, Ralph A. Aiello, and Jared A. Cooper. The partnership was called H.A.C., and the agreement stated an effective date retroactive to June 1, 1983. H.A.C. entered into a five (5) year real estate lease with 19 McMurray Realty, Inc. on September 12, 1984. The landlord owned a restaurant facility and H.A.C. owned a liquor license. The landlord leased the restaurant to H.A.C. with the proviso that upon termination of the lease by H.A.C., and tender of $25,-000.00 to H.A.C. by the landlord, H.A.C. would transfer ownership of the liquor license to the landlord. The lease obligation was also personally guaranteed by the individual partners, Hartman, Aiello, and Cooper. The restaurant operation began in January 1985 under the business name of "Sorry Charlie's".

The facts become substantially disputed and contentious at this juncture. However, we have had the opportunity to adjudge the credibility of the witnesses and documents, and to examine the public records of this Court. Therefore, we will determine the weight to be given to all.

Hartman asserts that several months after the restaurant opened, the partners of H.A.C. decided to incorporate Sorry Char-

lie's in order to limit their personal liability for the restaurant's debts. Hartman submitted a copy of Articles of Incorporation, approved July 25, 1985, naming "Sorry Charlie's South Hills Inc." as the new corporate entity.[1]

Aiello avows that he was never a party to any discussions regarding such an incorporation, never agreed to commencing any such activity and although his signature is allegedly affixed thereto, he avers he did not execute the Articles of Incorporation and that the signature thereon is not his. Aiello asserts that H.A.C. and the individual partners were and are personally liable for Sorry Charlie's debts, because it exists only as a trade name for H.A.C. We note that Aiello's declarations appear adverse to his personal interests, and no party has shown how Aiello might benefit therefrom.

In contradistinction, Hartman's assertions would cause the discharge of several hundred thousand dollars worth of unsecured debt. We further note that no one saw fit to refute Aiello's testimony by providing the Court with any proof that Aiello knew of the incorporation and/or was a party thereto. Items such as copies of corporate minutes showing Aiello in attendance, or meeting notices, or even waivers of notices sent to or from Aiello, would provide proof of the corporation's existence and Aiello's knowledge thereof. In fact, we have not received any indication that the corporation's Board of Directors authorized the filing of this bankruptcy petition. Such an authorization would have provided evidence of a corporate meeting.

The Court also received testimony relating to an asset-purchase agreement and a management agreement. The asset-purchase agreement between H.A.C., as Seller, and another party as Buyer, was executed in October of 1986, by numerous parties for the Buyer, and by Hartman and Cooper

1. We note that the bankruptcy filing lists the debtor as Sorry Charlie's of Upper St. Clair, Inc., rather than South Hills. We also note that the bankruptcy petition is signed by someone on Hartman's behalf, representing his authority as President of the Debtor: at trial Hartman testified he was not the President, but was the Secretary. We are unable to determine why these discrepancies exist, including a signature on the Declaration under penalty of perjury which is not Hartman's, but that of a representative; nor can we explain why Debtor's counsel has never moved to amend the petition to correct these errors. However, in light of our decision to dismiss, any such action at this time would be moot.

for H.A.C. Aiello did not sign the agreement and indicated at trial that he had no knowledge of its existence prior to the litigation. The agreement called for a transfer of assets, including H.A.C.'s inventory, equipment, furniture, fixtures, the liquor license, and assignment of the restaurant lease for a price of $200,000.00 to be paid as follows:[2]

(1) $25,000.00 on execution;

(2) $25,000.00 fifteen (15) days later;

(3) $25,000.00 on legal transfer of the liquor license; and

(4) $125,000.00 in the form of a thirty (30) year note, at ten percent (10%) interest, to be delivered at the time of closing.

The management agreement was drawn to precede the asset purchase and effectuate a stable transfer of operations. This document was signed by Hartman only, and purported to turn over the restaurant's management and operations to the Buyer, pending consummation of the deal.

Hartman claims that the management agreement was commenced, but the asset-purchase never occurred. The credibility of this statement is highly suspect. First, we note that *numerous* parties executed the asset-purchase agreement on Buyer's behalf, indicating an intent to be legally bound thereby, whereas *no one* representing the Buyer executed the management contract. Additionally we note that the Buyer has also filed bankruptcy. A review of Buyer/Debtor's Schedules indicate that it began operations in its own name 2–3 months after the asset-purchase agreement was executed. Those same Schedules show inventory and equipment valued in excess of $250,000.00, and a $100,000.00 debt to H.A.C.[3]

## ANALYSIS

■ Based upon the facts as stated we find that this bankruptcy filing was oppro-

brious, and therefore it must be eliminated. The Bankruptcy Court's jurisdiction to decide any matter is invoked by the filing of a bankruptcy petition. Absent that filing, the Bankruptcy Court is without power to decide the rights of any parties. We rely upon the veracity of the assertions offered in the petition, especially the "Unsworn Declaration Under Penalty Of Perjury" that the averments contained therein are true and correct.

In this case it has become clear that we are unable to rely upon the assertions in that petition. From an incorrect name of the debtor to a proxied signature, misstating the affiant's capacity, we have found false statements and half truths in abundance. And while we acknowledge that the creation of a corporate entity to avoid personal liability is no crime, forgery is … as is the transfer of partnership assets to a corporation without the consent of all of the partners. This case cannot be permitted to go forward based upon such adulterated premises.

■ However, during the pendency of a bankruptcy case, especially a reorganization case, the court enters orders that alter the rights of the parties and the parties themselves enter into agreements that alter their rights. When a bankruptcy case is dismissed, creditors who have been compromised during the bankruptcy may be faced with a debtor who, as is the case here, no longer has assets to which they may look for compensation. Congress attempted to rectify this situation in drafting § 349(b) of the Bankruptcy Code, which states as follows:

(b) *Unless the court, for cause, orders otherwise,* a dismissal of a case other than under section 742 of this title—

(1) reinstates—

---

**2.** The lease between the landlord (19 McMurray Realty) and the tenant (H.A.C.) provides: (1) landlord must approve any assignment of interest by tenant; and (2) landlord has first right to purchase the liquor license if tenant decides to sell the restaurant. We have no indication of landlord's consent to either of these contingencies.

**3.** Apparently H.A.C. had received approximately $100,000.00 as of the Buyer's bankruptcy filing, but neither the Schedules nor the parties proffered any information regarding the whereabouts of same.

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544. 545, 547. 548. 549. or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) *revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.*

(emphasis added).

Based upon same, it would appear that in the normal course it would be appropriate to disburse the present funds to H.A.C. However, § 349 and interpretive case law further indicate that some cases have so changed the rights of interested parties, that judicial intervention is necessary. *In re Lerch*, 85 B.R. 491 (Bankr.N.D.Ill.1988). Section 349 operates in two directions. While its primary purpose is to restore property rights to their initial positions, it also enables the court to order otherwise "for cause". *In re BSL Operating Corp.*, 57 B.R. 945 (Bankr.S.D.N.Y.1986).

■ As outlined in the facts above, the fast and loose play by at least some of the principals in this case has worked a fraud upon the creditors of an alleged corporation, the Commonwealth, and this Court. We have learned of an incorporation, fraudulently created, upon which substantial trade creditors have justifiably relied. We have witnessed at least one principal of this alleged entity who vacillates regarding ownership of the liquor license as the moment motivates him: he acknowledged H.A.C.'s ownership when originally negotiating the tax lien; now, as it is more expedient to assert ownership by the Debtor, he does so.

Bankruptcy has too lofty a purpose for such exploitation. To allow this conduct to pass without resounding condemnation would contribute to providing the bankruptcy system with a reputation as a haven for despicable conduct. This Court's paramount obligation is to prevent such perversions, and to thwart those atrocities which would trammel the esteemed goals of bankruptcy. *See Matter of Bruno*, 68 B.R. 101 (Bankr.W.D.Mo.1986).

Because the Bankruptcy Court has the power to retain jurisdiction over funds in its registry and over their distribution once a bankruptcy case is dismissed, *In re Miranne*, 87 B.R. 897 (E.D.La.1988), we will so Order.

An appropriate Order will be issued.

## ORDER OF COURT

AND NOW at Pittsburgh in said District this 22nd day of May, 1989, in accordance with the foregoing Memorandum Opinion of this same date, it is hereby ORDERED, ADJUDGED and DECREED as follows:

(1) The above-captioned bankruptcy case and attendant adversary proceeding be and are DISMISSED WITH PREJUDICE;

(2) The Trustee will turn over the funds presently in his possession to the Bankruptcy Court Registry for further disposition;

(3) The Clerk of Court will distribute the sum of $13,577.31 to the Commonwealth of Pennsylvania, Department of Revenue; and

(4) The Clerk of Court will retain the balance in an interest bearing account, pending further Order of this Court.