In re Robert G. PARSONS, individually, and as officer, director, and shareholder of Parsons Land & Cattle, Debtor.

William W. Bass, Trustee for the Estate of Robert G. Parsons et al., Plaintiff/Appellee,

v.

Robert G. Parsons, Defendant/Appellant,

W. Elton Kennedy, the United States of America, acting through the Internal Revenue Service, the State of Colorado, acting through the Colorado Department of Revenue, Defendants/Appellees.

No. 00 N 273.
Bankruptcy No. 92–21114 PAC.
Adversary Nos. 96–1494 PAC,
96–1799 PAC.

United States District Court,
D. Colorado.

Sept. 14, 2001.

Daniel F. Lynch, Esq., Denver, CO, Roberta Earley, Colorado Springs, CO, for Defendant/Appellant.

Christopher H. La Rosa, Esq., Arthur P. Yoon, Esq., U.S. Department of Justice, Tax Division, Washington, DC, for Appellee United States of America.

D. Bruce Coles, Esq., Fish & Coles, Denver, CO, for Appellee W. Elton Kennedy.

John D. Phillips, Esq., Shughart, Thomson & Kilroy, Denver, CO, for Appellee William M. Bass.

## ORDER AND MEMORANDUM OF DECISION

NOTTINGHAM, District Judge.

Debtor Robert G. Parsons appeals from several orders of the bankruptcy court entered in Parsons' Chapter 11 bankruptcy proceeding and incorporated into the bankruptcy court's January 25, 2000, final judgment. Jurisdiction is based on 28 U.S.C.A. § 158(a) (West Supp.1999).

### FACTS

On September 2, 1992, Parsons filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C.A. §§ 101–1330 (West 1993 & Supp.2000) [hereinafter "Bankruptcy Code"]. At the time Parsons filed his Chapter 11 petition, he owned a ranch in Southern Colorado and made his living as a cattle rancher. William M. Bass ("Trust-

ee") was appointed to serve as the trustee for Parsons' bankruptcy estate. No plan of reorganization was ever approved in this case. Instead, on December 17, 1994, in an effort to generate funds sufficient to satisfy all of the claims against Parsons' bankruptcy estate, Parsons, the Trustee, and Defendant/Appellee W. Elton Kennedy entered into a Contract to Buy and Sell Real Estate and Cattle ("Contract"). Under the terms of the Contract, Parsons and the Trustee agreed to sell to Kennedy a portion of Parsons' ranch known as the Upper Ranch and 100 head of broad cattle, as well as 4 bulls, for approximately $2.5 million. The closing price of the sale was to be sufficient to satisfy all claims, costs, and fees of Parsons' bankruptcy estate. Paragraph 24 of the Contract contained an integration clause which provided:

No change or modification of this Contract shall be valid unless the same is in writing and signed by the parties hereto. No waiver of any of the provisions of this Contract shall be valid in writing and signed by the party against whom it is sought to be enforced. This contract contains the entire agreement between the parties relating to the subject matter described herein. There are no promises, agreements, conditions, undertaking, warranties, representations, oral or written, express or implied, between the parties relating to the subject matter herein other than expressly set forth herein.

Paragraph 2 of the Contract expressly conditioned the sale of the Upper Ranch on the bankruptcy court's approval of the Contract.

On December 19, 1994, Parsons, the Trustee, and Kennedy entered into an Addendum to the Contract ("Addendum") which modified paragraphs 23 and 23(A) of the Contract. Paragraph 23 of the Contract dealt with the tax consequences ex-pected to result from the sale of Upper Ranch. The Addendum replaced Paragraph 23 and 23(A) of the Contract and provided a mechanism for the payment of any taxes incurred from the sale of the Upper Ranch. Under paragraph 23 of the Addendum, Parsons agreed (1) to assume sole responsibility for any tax liability created by the sale of the Upper Ranch, which was estimated to be approximately $500,000, and (2) to hold the Trustee harmless and indemnify the Trustee from any tax liability. Because the proceeds from the sale of the Upper Ranch would not be available for the payment of any tax liability arising from the sale, the Addendum provided that, during calendar year 1995, Parsons could sell cattle in the ordinary course of his business and the proceeds from these sales would be deposited with the Trustee for use to satisfy Parsons' 1995 tax liability. The Addendum required Kennedy to advance Parsons up to $500,000 through an irrevocable letter of credit for use to pay Parsons' 1995 tax liability in the event of Parsons' inability to do so. The Addendum provided that, in exchange for agreeing to pay Parsons' tax liability, Kennedy could purchase other portions of Parsons' ranch not included in the Upper Ranch [hereinafter "Remaining Property"] for an amount equal to the sum drawn on Kennedy's letter of credit to satisfy Parsons' tax liability.

The Addendum designated the Trustee to act as an escrow agent. The Trustee would hold Kennedy's letter of credit, the deeds to the Remaining Property, and the proceeds from the cattle sales. In the event that the proceeds for Parsons' cattle sales were insufficient to satisfy Parsons' tax liability, the Trustee was to draw on Kennedy's letter of credit to satisfy the balance of Parsons' tax liability and to deliver the deeds to the Remaining Property to Kennedy. If Kennedy acquired the Remaining Property, paragraph 23(g) of

the Addendum granted Parsons a five-year option to redeem the Remaining Property at a price equal to the amount drawn on Kennedy's letter of credit less the sum collected by the Trustee from Parsons' cattle sales, plus real estate taxes on the Remaining Property paid by Kennedy and interest. In the event a dispute arose over the monies for the tax payment held by the Trustee, paragraph 23(k) of the Addendum provided that the Trustee could, in his sole discretion, "interplead all parties and deposit any monies into a [c]ourt of competent jurisdiction and recover court costs and reasonable attorneys' fees in so interpleading such fees." The Addendum also stated that (1) it was Parsons' intent to seek a dismissal of his chapter 11 petition upon full payment of all of the bankruptcy estate's creditors and administrative expenses, and (2) that the Contract, as modified by the Addendum, shall survive the dismissal of Parsons' bankruptcy proceeding.

On December 17, 1994, the same day that Parsons, the Trustee, and Kennedy entered into the Contract, Parsons and Kennedy entered into a separate, written consulting agreement ("Consulting Contract"). Under the Consulting Contract, Kennedy agreed to retain Parsons as a consultant beginning on the date Kennedy acquired ownership of the Upper Ranch. Included in the Consulting Contract were provisions for Parsons to receive $1500 per month as compensation for his services and $200 per month in lieu of a specific health insurance policy. The Consulting Contract was to continue indefinitely unless either party terminated it for cause. Neither the Contract nor the Addendum referred, directly or indirectly, to the Consulting Contract.

On December 19, 1994, the bankruptcy court, pursuant to 11 U.S.C.A. § 363(b)(1), held a hearing on the Trustee's motion to approve the sale of the Upper Ranch under the terms specified in the Contract and Addendum. During the hearing, Parsons' counsel informed the bankruptcy court of the existence of the Consulting Contract, but represented to the bankruptcy court that the Consulting Contract was not an element of the Contract or Addendum and that the Contract and Addendum did not contain any consulting arrangement. On January 11, 1995, *nunc pro tunc* December 19, 1994, the bankruptcy court entered an order in which the court (1) approved the sale of the Upper Ranch in accordance with the terms of the Contract and Addendum, and (2) ordered Parsons and the Trustee to seek an order dismissing the case so as to preclude any tax liability to Parsons' bankruptcy estate resulting from the sale of the Upper Ranch. The bankruptcy court did not approve the Consulting Contract nor was the Consulting Contract incorporated into the bankruptcy court's order.

On February 15, 1995, the Trustee and Kennedy entered into an Escrow Agreement for the purpose of implementing the Addendum. Pursuant to the Escrow Agreement, the Trustee agreed to release Kennedy's letter of credit to the issuing bank if Parsons failed to deliver his 1995 income tax return to the Trustee by April 1, 1996. That same day or thereabout, Kennedy paid the purchase price for the Upper Ranch and delivered the letter of credit to the Trustee. The Trustee delivered the deed to the Upper Ranch to Kennedy and distributed the sale proceeds to the bankruptcy estate's creditors. Parsons delivered the deeds to the Remaining Property to the Trustee. In addition, Parsons sold cattle and remitted $168,493.16 in proceeds from these sales to the Trustee.

On December 15, 1995, *nunc pro tunc,* December 3, 1995, the bankruptcy court

granted the Trustee's motion to dismiss Parsons' Chapter 11 petition. On December 19, 1995, *nunc pro tunc*, December 5, 1995, the bankruptcy courted entered a corrected order dismissing Parsons' bankruptcy case. Although the bankruptcy court dismissed Parsons' bankruptcy case, the bankruptcy court's corrected order of dismissal expressly ordered that, for cause found under 11 U.S.C.A. § 349, the bankruptcy court retained jurisdiction over the case to: (1) enforce the bankruptcy court's previous orders approving the sale of Parsons' various real estate holdings and cattle; (2) determine all previous orders relative to the Trustee's authority to have acted pursuant to a bankruptcy court order; and (3) implement and resolve any disputes regarding executory contracts which were executed and approved by the bankruptcy court during the pendency of the case. The bankruptcy court's corrected order of dismissal also specifies that, for cause found pursuant to 11 U.S.C.A. § 349, Parsons shall not be revested with ownership in his real property or cattle sold pursuant a bankruptcy court order in this case.

Parsons did not deliver his 1995 income tax return to the Trustee by April 1, 1996. Pursuant to the Escrow Agreement, when the Trustee did not receive Parsons' 1995 income tax return, the Trustee released Kennedy's letter of credit to the issuing bank.[1] On June 27, 1996, the Trustee filed a motion with the bankruptcy court for clarification and enforcement of the bankruptcy court's previous order dismissing Parsons' bankruptcy case. On July 3, 1996, the bankruptcy court responded to the Trustee's motion by entering an order in which the bankruptcy reopened Parsons' bankruptcy case to allow the Trustee to file an interpleader action. On July 19, 1996, the Trustee filed an interpleader

complaint wherein the Trustee sought an order from the bankruptcy court: (1) allowing him to deposit the escrow funds into the registry of the court; (2) instructing him as to the disposition of the real property deeds; (3) declaring the Addendum null and void; and (4) entering judgment against Parsons for all costs and attorney fees associated with the interpleader action. The interpleader complaint named Parsons, Kennedy, the United States Government—acting through the Internal Revenue Service [hereinafter "United States"]—and the State of Colorado, Colorado Department of Revenue [hereinafter "Colorado"] as defendants.

On September 2, 1996, Parsons filed a complaint against Kennedy in Colorado state court [hereinafter "state action"] in which Parsons requested the following relief: (1) a declaration that the Contract and the Addendum are void *ab initio* ("first claim"); (2) an order construing the Contract and Addendum to include certain oral promises made by Kennedy ("second claim"); (3) a declaration that the Contract and the Addendum are void for inadequate consideration and inaccuracies in the Trustee's deed ("third claim"); (4) an award of actual and punitive damages for a work-related injury suffered by Parsons ("fourth claim"); (5) an award of damages for breach of the Contract ("fifth claim"); and (6) an order holding Kennedy liable under the Contract and Addendum for Parsons' tax liability ("sixth claim"). On November 22, 1996, Kennedy filed a notice of removal and removed to the bankruptcy court Parsons' first, second, third, and sixth claims in the state action. On January 13, 1997, the bankruptcy court entered an order in which the court held that the removed claims would not be remanded to state court.

---

1. Parsons did not file his 1995 income tax return until June 1997.

On September 3, 1996, Parsons moved to dismiss the interpleader action filed by the Trustee. Parsons argued in his motion that the interpleader action should be dismissed for lack of subject matter jurisdiction because the bankruptcy court did not have jurisdiction to decide the issues necessary to determine who was entitled to the escrowed funds. Kennedy and Colorado objected to Parsons' motion to dismiss. On November 12, 1996, the bankruptcy court issued an order denying Parsons' motion to dismiss. Specifically, the bankruptcy court held that: (1) Parsons' failure to appeal the bankruptcy court's December 19, 1995, corrected order of dismissal precluded Parsons from challenging the bankruptcy court's continued jurisdiction over issues relating to the Contract and Addendum; and (2) the issues raised in the state action were inextricably intertwined with the issues raised in the interpleader action such that continued jurisdiction over the interpleader action and the removed claims from the state action was appropriate. Parsons appeals from this order. On December 9, 1996, Parsons filed a counterclaim against the Trustee for damages based on (1) the Trustee's failure to file Parsons 1994 and 1995 tax returns, or (2) the Trustee's failure to provide Parsons with the necessary information so that he could file his tax returns.

Subsequent to the bankruptcy court's denial of Parsons' motion to dismiss, Parsons, the Trustee, and Kennedy filed motions for summary judgment. Parsons' summary-judgment motion requested the bankruptcy court to find as a matter of law that: (1) Parsons had a right to redeem the Upper Ranch under the Contract and Addendum; (2) Parsons has a life estate in a specific parcel of land known as the Homestead based on a side agreement with Kennedy; (3) Kennedy breached the Consulting Contract; (4) the Trustee was responsible for filing and paying Parsons'

and/or Parsons' bankruptcy estate's 1994 and 1995 federal and state income taxes; (5) Parsons was entitled to an award of damages based on the Trustee's failure to comply with his statutory and/or fiduciary duty to file the 1994 and 1995 tax returns; and (6) Parsons was entitled to an award of damages based on the Trustee's failure to provide Parsons with sufficient information necessary to prepare the 1994 and 1995 tax returns. The Trustee moved for summary judgment on Parsons' counterclaim relating to the Trustee's duty to file the 1994 and 1995 tax returns, seeking a determination that the Trustee had no obligation to file the tax returns and that the Trustee could not be held liable for any damages resulting from the non-filing of those returns. Kennedy moved for summary judgment on Parsons' first, second, third, and sixth claims removed from the state action as well as sought specific determinations as a matter of law regarding: (1) Parsons' ability to avoid the sale of the Upper Ranch under 11 U.S.C.A. § 363(n); (2) the severability of the Contract and Addendum from the Consulting Contract; (3) the application of the statute of frauds and parole evidence rule to bar Parsons from adding to or modifying the terms of the written Contract and Addendum through oral statements allegedly made by Kennedy; (4) the adequacy of consideration for the Contract and Addendum; and (5) Parsons' ability to rescind the Contract and Addendum under a number of different legal theories.

On November 13, 1997, the bankruptcy court issued an extensive written opinion on Parsons' and the Trustee's motions for summary judgment. The bankruptcy court denied Parsons' motion *in toto*, concluding that: (1) the bankruptcy court lacked jurisdiction to determine the existence and enforceability of side agreements, including the Consulting Contract

and Parsons' alleged life estate, because the bankruptcy court's corrected order of dismissal limited the court's jurisdiction to the implementation of and any disputes regarding executory contracts which were executed and court approved during the pendency of Parsons' case; and (2) the plain language of the Contract and Addendum did not provide Parsons with an option to redeem the Upper Ranch but rather limited Parsons' option to redeem to the Remaining Property. As to the Trustee's motion, the bankruptcy court granted summary judgment in the Trustee's favor on the issue of the Trustee's duty to file the 1994 and 1995 tax returns. The bankruptcy court held that the Trustee had neither a statutory nor fiduciary duty to file the 1994 and 1995 tax returns. The bankruptcy court noted that, apart from any statutory or fiduciary considerations, under the plain language of the Contract and Addendum Parsons had assumed the responsibility for filing his 1995 tax return. The bankruptcy court, however, denied the Trustee's motion with respect to the Trustee's contention that he had provided Parsons with the necessary information to allow Parsons to file his tax returns.

On January 9, 1998, the bankruptcy court entered an order granting Kennedy's motion for summary judgment. In its order, the bankruptcy court held that, as a matter of law: (1) the Contract and Addendum did not provide Parsons with an option to redeem the Upper Ranch; (2) the Contract and Addendum were separate contracts and should not be construed together; and (3) Parsons could not rely on extrinsic evidence of alleged oral promises, statements, or agreements to vary the express terms of the Contract and Addendum. To the extent that Parsons' claims raised issues of independent agreements never presented to or approved by the bankruptcy court, the court declined to exercise jurisdiction over those claims.

Parsons appeals from both of the bankruptcy court's summary-judgment orders.

On November 20, 1998, the bankruptcy court commenced a trial on the Trustee's liability for failing to provide Parsons with the necessary information that would have enabled him to file his tax returns. On December 17, 1998, at the conclusion of Parsons' case-in-chief, the Trustee moved to dismiss Parsons' claim. On January 4, 1999, in another comprehensive written opinion, the bankruptcy court granted the Trustee's motion. The bankruptcy court found that the evidence adduced at trial did not support Parsons' allegations that the Trustee impeded or prevented Parsons from filing a timely 1995 tax return. The bankruptcy court also found that, under the terms of the Contract, Addendum, and Escrow Agreement, the Trustee was entitled to recover reasonable attorney fees and costs associated with the interpleader action and that, since Parsons' failure to file the 1995 tax return precipitated the interpleader action, those fees and costs should be assessed against Parsons. On July 19, 1999, the bankruptcy court entered judgment in the Trustee's favor and against Parsons for $46,086.15 in attorney fees and costs incurred by the Trustee. Parsons appeals from this judgment.

On September 21, 1999, the bankruptcy court held a hearing to address the competing claims made by the United States and Colorado to the interpleaded proceeds from Parsons' cattle sales to satisfy Parsons' federal and state tax liability. The bankruptcy court concluded that it did not have jurisdiction to address these issues and ordered the Trustee to deposit the interpleaded funds in a bank account in the care of the United States and Colorado and commence an action in a court of competent jurisdiction to resolve the competing claims to the proceeds. The Trustee complied with the bankruptcy court's

order and commenced a separate interpleader action in this court, *Bass v. United States*, 99–N–2146 (D.Colo.1999). The United States and Colorado have since resolved their claims in that case and on June 28, 2001, this court dismissed that case and, without objection from any party, ordered the interpleaded proceeds returned to Parsons.

On January 25, 2000, the bankruptcy court entered final judgment in Parsons' bankruptcy case. The final judgment incorporated several of the bankruptcy court's previous orders from which Parsons now appeals. On February 4, 2000, Parsons filed his notice of appeal of the bankruptcy court's final judgment. On May 5, 2000, Parsons filed his statement of issues on appeal which raises the following questions:

(1) whether the bankruptcy court had jurisdiction to adjudicate the interpleader action and claims removed from the state action;

(2) whether, if the bankruptcy court had jurisdiction, it erred in finding that the Trustee was not obligated to file Parsons' tax returns while ruling that the Contract and Addendum were valid and enforceable;

(3) whether the bankruptcy court erred in its interpretation of the Contract and Addendum; and

(4) whether the bankruptcy court erred in entering judgment against Parsons and in favor of the Trustee for attorney fees and costs incurred by the Trustee in prosecuting the interpleader action.

## ANALYSIS

### 1. Standard of Review

When a district court reviews a final order entered by a bankruptcy court, the conclusions of law made by the bankruptcy court are subject to *de novo* review. *Rowe Int'l, Inc. v. Herd (In re Herd)*, 840 F.2d 757, 759 (10th Cir.1988); *Branding Iron Motel, Inc. v. Sandlian Equity, Inc. (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399–400 (10th Cir.1986). The findings of fact adopted by the bankruptcy court, however, must not be set aside unless they are clearly erroneous. Bankr.R. 8013; *Fullmer v. United States (In re Fullmer)*, 962 F.2d 1463, 1466 (10th Cir. 1992); *Branding Iron Motel, Inc.*, 798 F.2d at 399. A finding is clearly erroneous when, in consideration of the record, it lacks logic or is otherwise implausible. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Mixed questions consisting primarily of legal conclusions drawn from facts are also reviewed *de novo*. *Gullickson v. Brown*, 108 F.3d 1290, 1292 (10th Cir.1997) (citing *Clark v. Security Pac. Bus. Credit, Inc., [In re Wes Dor, Inc.]*, 996 F.2d 237, 241 [10th Cir.1993] ). Where the issue on appeal involves a matter within the bankruptcy court's discretion, the bankruptcy court's order will be set aside only upon a showing of an abuse of discretion. *Joseph v. Lindsey (In re Lindsey)*, 229 B.R. 797, 799 (10th Cir. BAP 1999). "In this circuit, abuse of discretion is defined as 'an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.' " *In re Rambo*, 209 B.R. 527, 530 (10th Cir. BAP 1997) (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 [10th Cir.1994] ) (further quotations omitted). Thus, under the abuse of discretion standard: "a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the balance of permissible choice in the circumstances." *Lindsey*, 229 B.R. at 799 (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 [10th Cir.1994] ) (further quotations omitted).

## 2. Jurisdictional Challenges

Although far from a model of clarity, the gravamen of Parsons' appeal appears to be that the bankruptcy court improperly invoked 11 U.S.C.A. § 349(b) in its December 19, 1995, corrected order of dismissal (1) to retain jurisdiction over the implementation and resolution of disputes regarding court-approved executory contracts entered into during the pendency of Parsons' bankruptcy case, and (2) to decline to revest Parsons with the real property and cattle subject to the Contract and Addendum following the dismissal of Parsons' bankruptcy case. (Appellant's Opening Br. at 6–12 [filed July 25, 2000] [hereinafter "Parsons' Br."].) Parsons contends that the bankruptcy court lost jurisdiction over his bankruptcy case when it dismissed his case in December 1995 and therefore lacked jurisdiction to hear the Trustee's interpleader action and decide issues raised in the state action which were subsequently removed to the bankruptcy court. (Id.) The Trustee, Kennedy, and the United States (collectively "Appellees") contend that Parsons' failure to appeal in a timely manner the bankruptcy court's December 19, 1995, corrected order of dismissal, precludes him from challenging the bankruptcy court's continued jurisdiction over disputes regarding the Contract and Addendum. (Br. of Appellee William M. Bass at 11–13 [filed Aug. 25, 2000] [hereinafter "Trustee's Resp."]; Kennedy's Resp. Br. at 15–17 [filed Aug. 25, 2000] [hereinafter "Kennedy's Resp."].) Appellees further contend that, regardless of the timeliness of Parsons' challenge to the bankruptcy court's jurisdiction, the bankruptcy court did not abuse its discretion in retaining jurisdiction over disputes arising from the implementation of the Contract and Addendum. (Trustee's Resp. at 13–16; Kennedy's Resp. at 17–18; Appellee United States of America's Resp. Br. at 22–23 [filed Aug. 14, 2000] [hereinafter "United States' Resp. Br."].)

██ Under the Federal Rules of Bankruptcy Procedure, an appeal must be filed within "[ten] days of the date of the judgement, order, or decree appealed from." See Fed. R. Bankr.P. 8002(a). This requirement is mandatory and jurisdictional. Weston v. Mann (In re Weston), 18 F.3d 860, 862 (10th Cir.1994); Shields v. Standard Fed. Sav. Bank (In re Shields), 150 B.R. 259, 260 (D.Colo.1993). In the absence of a timely filed notice of appeal, the appeal must be dismissed. Id. (citations omitted). An order of dismissal is a final, appealable order. See, e.g., United States v. Standard State Bank, 905 F.2d 185, 187 (8th Cir.1990); In re Gregory, 214 B.R. 570 573 (S.D.Tex.1997) (holding dismissal order with retention of jurisdiction over proceeds from sale of bankruptcy estate property final, appealable order); Chemold Sys., Inc. v. Powers (In re Chemold Sys., Inc.), 137 B.R. 971, 973 (D.Kan.1992) (holding order dismissing bankruptcy case and denying reinstatement of transfer under 11 U.S.C.A. § 349[b][1][B] final order).

It is undisputed that Parsons did not file his notice of appeal until February 4, 2000, more than four years after the bankruptcy court entered its corrected order of dismissal. Because of Parsons' failure to file a timely notice of appeal of the bankruptcy court's corrected order of dismissal, this court does not have jurisdiction to review the propriety of that order. Shields, 150 B.R. at 260. The effect of Parsons' untimely appeal of the bankruptcy court's corrected order of dismissal, as it relates to the specific arguments raised by Parsons on appeal, is three fold. First, Parsons cannot challenge the bankruptcy court's dismissal of his bankruptcy case on the ground that bankruptcy court did not have cause to dismiss his case as the term

is defined in 11 U.S.C.A. § 1112(b). (*See* Parsons' Br. at 7–8.) Second, Parsons cannot challenge the bankruptcy court's finding that cause existed under 11 U.S.C.A. § 349(b) to retain jurisdiction over court-approved executory contracts entered into during the pendency of Parsons' bankruptcy case. Third, Parsons cannot challenge the bankruptcy court's finding that cause existed under 11 U.S.C.A. § 349(b) to decline to revest Parsons with ownership of the real property and cattle sold pursuant to the Contract and Addendum. (*Id.* at 26.)

Although Parsons' untimely filing of a notice of appeal precludes a direct attack on the bankruptcy court's corrected order of dismissal, this does not end the inquiry into whether the bankruptcy court had jurisdiction over the Trustee's interpleader action. As an alternate basis for setting aside the bankruptcy court's corrected order of dismissal, Parsons argues that the bankruptcy court's order is void on its face and thus subject to collateral attack. While not artfully articulated, Parsons appears to assert two grounds for collaterally attacking the bankruptcy court's dismissal as void. First, Parsons contends that the bankruptcy court's order is void because the dismissal order does not contain any written findings adequately explaining why cause existed under 11 U.S.C.A. § 349(b) to retain jurisdiction over the enforcement of the Contract and Addendum. (Parsons' Br. at 5–6, 8–9, 11.) Second, Parsons suggests in passing that the bankruptcy court's appointment of its former law clerk and law partner of the Trustee as counsel for the Trustee violated Federal Rule of Bankruptcy Procedure 5002(b), which, according to Parsons, exemplifies the bankruptcy court's willingness "to stretch the law to execute [its] will even to the point of exercising jurisdiction [it] did not have." (Parsons' Br. at 8; Reply Br. of Appellant

Robert G. Parsons at 1 [filed Sept. 18, 2000] [hereinafter "Parsons' Reply"].)

It is well established that a judgment or court order is not void because it is or may be erroneous. *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 224 (10th Cir.1979) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374–78, 60 S.Ct. 317, 84 L.Ed. 329 [1940] ) (further citations omitted). Rather, for a judgment or court order to be void, it must be determined that the rendering court was powerless to enter the judgment or order. *Id.* As explained by the Tenth Circuit in *V.T.A., Inc.*, "voidness usually arises for lack of subject matter jurisdiction or jurisdiction over the parties. It may also arise if the court's action involves a plain usurpation of power or if the court has acted in a manner inconsistent with due process of law." *Id.* at 224–25. In the interests of finality, however, the concept of setting aside a judgment on voidness grounds is narrowly restricted. *Id.*

Under these standards, it is clear that Parsons' voidness challenges must fail. Parsons cites no relevant legal authority to support his contention that the bankruptcy court's order is void because the court did not adequately explain in its order why cause existed under 11 U.S.C.A. § 349(b) to retain jurisdiction over the implementation of the Contract and Addendum. There is nothing in the plain language of 11 U.S.C.A. § 349(b) that requires the bankruptcy court to explain in its order of dismissal the basis for its finding of cause to retain jurisdiction over the dismissed case, and what little case law that exists on the issue suggests that there is no such requirement. *See In re Gregory*, 214 B.R. at 573–74; *Miranne v. First Fin. Bank (In re Miranne)*, 87 B.R. 897, 903 (E.D.La.1988); *In re Mandalay Shores Coop. Hous. Ass'n*, 60 B.R. 22, 23 (Bankr.M.D.Fla.1986); *cf. In re*

*Chemold Sys., Inc.*, 137 B.R. at 974 ("Although the Bankruptcy Court's subsequent order of dismissal does not expressly state that it was 'for cause,' it clearly and unambiguously states that the provisions of § 349[b] do not apply to the dismissal.") Even if there was such a requirement, the bankruptcy court's failure to articulate the basis for finding cause would, at best, amount to a "mere legal error on a matter over which it had subject matter jurisdiction." *Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth (In re Pavelich)*, 229 B.R. 777, 784 (9th Cir. BAP 1999). There can be no dispute that, at the time the bankruptcy court entered its corrected order of dismissal, it had subject matter jurisdiction over Parsons' case and personal jurisdiction over all of the parties. Also, there can be no dispute that 11 U.S.C.A. § 349(b) authorizes the bankruptcy court to retain jurisdiction over dismissed cases. *See In re Miranne*, 87 B.R. at 903; *In re Mandalay Shores Coop. Hous. Assn.*, 60 B.R. at 23. Consequently, even if the bankruptcy erred in not adequately explaining why cause existed to retain jurisdiction over the implementation of the Contract and Addendum, this does not render the bankruptcy court's order void.

■ With respect to Parsons' other contention—that the bankruptcy court's alleged improper appointment of a former law clerk as Trustee's counsel displays such a manifest disregard for the law and that this somehow renders the bankruptcy court's order of dismissal void—I fail to see what one has to do with the other. Even if an improper appointment could render an unrelated order void—for example by evincing judicial conduct contrary to fundamental principles of due process— there was nothing improper about the bankruptcy court's appointment of its former law clerk as counsel for the Trustee.

Federal Rule of Bankruptcy Procedure 5002(b) provides, in relevant part, that "[a] bankruptcy judge may not approve the appointment ... or approve the employment of a person ... as an attorney ... if that person is or has been so connected with such judge ... as to render the appointment or employment improper." The Advisory Committee Notes specifically state that "in all but the most unusual situations service as a law clerk to a bankruptcy judge is not the type of connection which alone precludes appointment or employment." Fed. R. Bankr.P. 5002(b) advisory committee notes, 1985 amendments. Parsons' has utterly failed to identify any "unusual situations" which would preclude the appointment of bankruptcy court's former law clerk as counsel for the Trustee.

■ Having rejected Parsons' direct and collateral attacks on the bankruptcy court's corrected order of dismissal, there remains one final inquiry into whether the bankruptcy court properly exercised jurisdiction over the Trustee's interpleader action and the claims removed from the state action. As the bankruptcy court correctly noted in its order denying Parsons' motion to dismiss, although Parsons' failure to file a timely appeal of the bankruptcy court's corrected order of dismissal bars a challenge to the bankruptcy court's reservation of jurisdiction, Parsons can still object to any action which exceeds the scope of the bankruptcy court's retained jurisdiction. (R. on Appeal, Vol. I, Doc. 24 [Order Denying Mot. to Dismiss Compl. and Setting Date to File Answer at 4 n. 4 (filed in Bankr.Ct. D. Colo. Nov. 12, 1996) ] [hereinafter "R"].) To the extent that Parsons' brief could be construed to raise such an objection, it fares no better than his other attacks on the bankruptcy court's jurisdiction.

■ The bankruptcy court's corrected order of dismissal expressly re-

served jurisdiction to: (1) determine all orders previously entered by the bankruptcy court approving the sale of Parsons' real estate and cattle—i.e. the Contract and Addendum; and (2) oversee the implementation of and any disputes regarding executory contracts which were approved by the bankruptcy court during the pendency of Parsons' case. (Appellees' Mot. for Judicial Notice or to Correct R. on Appeal, Attach. C [Corrected Order Dismissing Chapter 11 Case (filed in Bankr. Ct. D. Colo. Dec. 19, 1995)] [filed Aug. 28, 2000] [hereinafter "Mot. to Correct R."].) Contrary to Parsons' assertions, I find that the bankruptcy court's consideration of the Trustee's interpleader action, as well as the claims removed from the state action, fall well within the scope of the bankruptcy court's jurisdictional reservation. Indeed, the matters presented to and heard by the bankruptcy court related directly to the bankruptcy court's prior approval of the sale of the Upper Ranch under the terms set forth in the Contract and Addendum. I fully agree with the bankruptcy court's observation that "[t]he determinations in the interpleader action are inextricably intertwined with some of the questions raised in the state court action." (R., Vol. I, Doc. 24 [Order Denying Mot. to Dismiss Compl. and Setting Date to File Answer at 4 (filed in Bankr.Ct. D. Colo. Nov. 12, 1996)].) In short, the claims asserted by Parsons in the state court action were part and parcel to the bankruptcy court's retained jurisdiction over the Contract and Addendum to ensure that these court-approved contractual obligations were met. Moreover, the bankruptcy court's decision to exercise jurisdiction over Parsons' state action claims that were inextricably intertwined with the interpleader did not amount to an abuse of discretion inasmuch as the bankruptcy court's retained jurisdiction squares with considerations of "judicial economy, convenience to the parties,

fairness and comity." *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 163 (2d Cir.1995) ("The decision whether to retain jurisdiction should be left to the sound discretion of the bankruptcy court ....").

In sum, while Parsons may feel that his obligations under the Contract and Addendum should have been decided in state court rather than bankruptcy court, he has not presented any valid basis, either legal or factual, for challenging the bankruptcy court's retention of jurisdiction over disputes arising under the Contract and Addendum. Accordingly, I find no error in the bankruptcy court's reservation of jurisdiction in its corrected order of dismissal. Nor do I find error in the bankruptcy court's decision to exercise jurisdiction over those matters that fell within the scope of the bankruptcy court's retained jurisdiction.

### 3. Trustee's Obligation to File Parsons' Tax Returns

Assuming that the bankruptcy court had jurisdiction over the Trustee's interpleader action, Parsons argues that the bankruptcy court improperly granted summary judgment in the Trustee's favor on Parsons' claim that the Trustee was under a statutory and fiduciary obligation to file Parsons' 1994 and 1995 tax returns. (Parsons' Br. at 12–18.) Parsons argues that, under bankruptcy law, federal tax law, and the Supreme Court's decision in *Holywell Corp. v. Smith*, 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992), the Trustee had an absolute duty to file Parsons' income 1994 and 1995 income tax returns, and that the bankruptcy court erred in its decision to the contrary. (*Id.*) Whether the Trustee had an absolute statutory and fiduciary duty to file Parsons' 1994 and 1995 tax returns is question of law which I review *de novo. Rowe Int'l,*

*Inc.,* 840 F.2d at 759; *Branding Iron Motel, Inc.,* 798 F.2d at 399–400.[2]

Section 1398 of the Internal Revenue Code sets forth the federal income tax rules applicable to Chapter 11 bankruptcy cases where the debtor is an individual. *See* 26 U.S.C.A. § 1398 (West 1988). Section 1398 provides that when an individual files a Chapter 11 bankruptcy case, the bankruptcy estate is treated as separate taxable entity distinct from the individual debtor. *Id., In re Nevin,* 135 B.R. 652, 653 (Bankr.D.Haw.1991). The Chapter 11 trustee, as a fiduciary of the bankruptcy estate, becomes responsible for preparing and filing the bankruptcy estate's federal income tax returns. 26 U.S.C.A. § 6012(b)(4); *Holywell,* 503 U.S. at 54–58, 112 S.Ct. at 1024–25; *In re Nevin,* 135 B.R. at 653. If the Chapter 11 bankruptcy case is dismissed, however, section 1398 by its own terms does not apply and the bankruptcy estate never becomes a separate taxable entity for which the trustee must prepare and file federal income tax returns. *Id.* § 1398(b)(1); *In re Nevin,* 135 B.R. at 653. The legislative history of section 1398 specifically addresses the individual debtor's tax consequences upon the dismissal of the debtor's Chapter 11 case:

> If a bankruptcy case involving an individual is commenced but subsequently dismissed by the bankruptcy court, the [bankruptcy] estate is not treated as a separate entity (new Code sec. 1398(b)(1)). In this situation, where the bankruptcy case does not run to completion, it is appropriate to treat the debtor's tax status as if no proceeding had been brought.

H.R.Rep. No. 96–833 (1980), S.Rep. No. 96–103 (1980), *reprinted in* 1980

U.S.C.C.A.N. 7017, 7040. Thus, "[i]f the [bankruptcy] estate is not treated as a separate entity because the bankruptcy case was dismissed, *the debtor includes on his … return(s), for the year(s) the estate was in existence* any gross income, deductions, or credits which otherwise would be tax items of the estate." *Id.* at 7040 n. 3 (emphasis supplied); *see also* 15 Collier on Bankruptcy ¶ TX3.02[1][b] at TX3–6 ("Even though an individual's separate bankruptcy estate may exist for a temporary period of time prior to dismissal, the estate is not a taxable entity if the petition is dismissed.")

Here, the bankruptcy court dismissed Parson's case on December 19, 1995, albeit with a limited reservation of jurisdiction. The dismissal occurred prior to the confirmation of a Chapter 11 plan of reorganization. Once the bankruptcy court dismissed Parsons' case, Parsons's bankruptcy estate was no longer a separate taxable entity under section 1398. *See* 26 U.S.C.A. § 1398(b)(1); *In re Nevin,* 135 B.R. at 653. The Trustee, therefore, had no duty to prepare and file federal income tax returns of Parsons' behalf; instead, the duty to prepare and file Parsons' individual tax returns rested with Parsons. *Id.;* H.R.Rep. No. 96–833 (1980), S.Rep. No. 96–103 (1980), *reprinted in* 1980 U.S.C.C.A.N. 7017, 7040. In fact, the Trustee, in his capacity as a bankruptcy trustee, did not have the authority to file a federal income tax return on behalf of a bankruptcy individual. *See* Rev. Rul. 72–387, 1972–2 C.B. 632.

The Supreme Court's decision in *Holywell* does not alter this result. There, the debtor's confirmed Chapter 11 plan assigned all of the debtor's bankruptcy es-

---

**2.** Although Parsons argued in the bankruptcy court that the Trustee was under an absolute duty to file both federal and state income tax returns on Parsons' behalf, Parsons only ap-

peals the bankruptcy court's decision with respect to Parsons' federal income tax returns.

tate to a trust administered by the trustee. *Holywell Corp.*, 503 U.S. at 51–52, 112 S.Ct. at 1024. The Court held that, as a fiduciary of the trust, the trustee had a duty to file federal income tax returns and pay the taxes when the trust sold assets that generated tax liability. *Id.* at 56–58, 112 S.Ct. at 1026–27. Unlike the circumstances in *Holywell*, Parsons' case was dismissed prior to confirmation of a Chapter 11 plan, thus invoking 26 U.S.C.A. § 1398(b)(1). Moreover, contrary to Parsons' reading of *Holywell*, the Supreme Court did not hold that a bankruptcy trustee has a duty to file tax returns for the debtor's *individual* taxes. Rather, the Court's holding was directed towards the trustee's obligation to file tax returns on behalf of the trust which resulted from the confirmed Chapter 11 plan. *Holywell*, 503 U.S. at 55–58, 112 S.Ct. at 1026–27.

Based on the foregoing, I find no error in the bankruptcy court's conclusion that the Trustee was not under an absolute statutory and fiduciary duty to file Parsons' individual tax returns. Accordingly, I affirm the bankruptcy court's grant of summary judgment to the Trustee on Parsons's counterclaim that the Trustee was under an absolute duty to file his 1994 and 1995 tax returns.[3]

### 4. The Bankruptcy Court's Interpretation of the Contract and Addendum

Parsons alleges that on December 17, 1994, Kennedy made the following oral promises and/or representations to him: (1) after the dismissal of Parsons' bankruptcy case, Kennedy would reconvey to Parsons certain or all of the water rights conveyed to Kennedy pursuant to the Contract and Addendum; (2) Kennedy would allow Parsons to run cattle on the Upper Ranch for the duration of his (Parsons') life; and (3) Parsons would have a five-year option to repurchase all of the property described in the Contract and Addendum, including the Upper Ranch, beginning from the date the parties executed the Addendum. (*See* R., Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 13 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998) ].) As a result of his reliance on these promises and/or representations, Parsons claims that the Contract and Addendum should be construed to include these promises and/or representations even though they were not included in the written terms of the Contract and Addendum. (*Id.*, Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 13 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998) ].) In its January 9, 1998, summary-judgment order, the bankruptcy court rejected Parsons' contention and held that as a matter of law: (1) the Contract and Addendum did not provide Parsons with an option to redeem the Upper Ranch; (2) the Contract and Addendum and the Consulting Contract were separate contracts and should not be construed together; and (3) Parsons could not rely on extrinsic evidence of alleged oral promises, statements, or agreements to vary the express terms of the Contract and Addendum. (*Id.*, Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 9–19 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998) ].) In rejecting Parsons' contention that the Contract and Addendum should be construed to include Kennedy's alleged oral promises or side agreements with Kennedy, the bankruptcy court concluded that:

3. Because I affirm the bankruptcy court's decision that the Trustee had no statutory duty to file Parsons' individual tax returns, I need not address Parsons' contention that the Contract and Addendum impermissibly delegated the Trustee's duty to file Parsons' tax returns to Parsons. (*See* Parsons' Br. at 17.)

(1) based upon well-established principles of bankruptcy law, the terms of a court-approved asset sale under 11 U.S.C.A. § 363 are binding on the parties to the sale and cannot be modified by extrajudicial agreements to the contrary; and (2) apart from bankruptcy law considerations, Colorado contract law precludes Parsons from introducing evidence of these oral promises or other collateral agreements to vary the express terms of the Contract or Addendum. (*Id.,* Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 9–18 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998) ].)

Parsons, while apparently ignoring the bankruptcy court's conclusion that extrajudicial agreements cannot be used to modify court-approved sales under the Bankruptcy Code, contends that the bankruptcy court erred in its conclusion that Colorado law prohibits him from introducing extrinsic evidence of collateral agreements to modify the express written terms of the Contract and Addendum.[4] (Parsons' Br. at 18–24.) More specifically, Parsons contends that, because the Addendum is ambiguous with respect to whether the Parsons' five-year option to redeem includes the Upper Ranch, the bankruptcy court should have considered extrinsic evidence in interpreting the redemption provision in the Addendum. (*Id.* at 18–19.) Parsons

also contends that the bankruptcy court should have considered the side agreements as part of the Contract and Addendum because the side agreements were intended to be a part of the Contract and Addendum and consideration of the side agreements would not vary the terms of the Contract and Addendum. (*Id.* at 22.)

■■■■ Under Colorado law, the interpretation of a contract is generally a question of law for the court. *See Smalley & Co. v. Emerson & Cuming, Inc.,* 808 F.Supp. 1503, 1514 (D.Colo.1992) (citing *Fibreglas Fabricators, Inc. v. Kylberg,* 799 P.2d 371, 374 [Colo. 1990] ), *aff'd,* 13 F.3d 366 (10th Cir.1993); *Holland v. Board of County Comm'rs,* 883 P.2d 500, 505 (Colo. Ct.App.1994) (citing *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.,* 195 Colo. 253, 577 P.2d 748, 750–51 [1978] ). The primary goal of contract interpretation is to determine and give effect to the intent of the parties as it existed at the time the contract was executed. *Engineered Data Prods., Inc. v. Nova Office Furniture, Inc.,* 849 F.Supp. 1412, 1417 (D.Colo.1994) (citations omitted); *Main Elec., Ltd. v. Printz Corp.,* 980 P.2d 522, 526 (Colo.1999) ("The parties' intention when drafting a contract governs the interpretation of that contract."); *Cache Nat'l Bank v. Lusher,* 882 P.2d 952, 957

---

**4.** To the extent that Parsons' statement in his opening brief that "[a]ll of the agreements were considered together when the [bankruptcy] court approved the sale of the [Upper] [R]anch" could be construed as a challenge to the bankruptcy court's ruling that court-approved asset sales cannot, as a matter of federal bankruptcy law, be modified by extrajudicial agreements, nothing could be farther from the truth. (*See* Parsons' Br. at 22.) Neither the Contract nor the Addendum referenced any collateral agreements. Moreover, Parsons' then-attorney represented to the bankruptcy court during the hearing on the approval of the Contract and Addendum that the Consulting Contract was a separate agreement and was in no way part of the Contract and Addendum. Parsons was present and testified at that hearing. If Parsons believed that his then-attorney incorrectly represented that the Consulting Contract was not part of the Contract and Addendum, he should have said so at the hearing. Finally, the bankruptcy court's order approving the sale of the Upper Ranch does so only on the terms set forth in the Contract and Addendum. (*See Id.,* Vol. I., Doc. 1 [Compl. for Interpleader, Ex. D (Order Approving the Mot. of the Debtor and the Chapter 11 Trustee to Sell Real and Personal Property Free and Clear of Liens, Claims, Encumbrances and Interests [filed in Bankr.Ct. Jan. 11, 1995] ) ].)

(Colo.1994) (en banc). "The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. Each word in an instrument is to be given meaning if at all possible." *United States Fidelity & Guar. Co. v. Budget Rent–A–Car Sys., Inc.*, 842 P.2d 208, 213 (Colo.1992) (citations omitted); *see also Colowyo Coal Co. v. City of Colo. Springs*, 879 P.2d 438, 445 (Colo.Ct.App.1994) (stating that a court must construe the parties' agreement "as a whole ... so as to give effect to each of its provisions") (citation omitted). A written contract which is complete and free from ambiguity represents the objective intent of the parties and will be enforced according to its plain language. *See Board of County Comm'rs v. E–470 Pub. Highway Auth.*, 881 P.2d 412, 420 (Colo.Ct.App. 1994) (citing *In re May*, 756 P.2d 362, 369 [Colo. 1988]), *aff'd in part and rev'd in part on other grounds sub nom. Nicholl v. E–470 Pub. Highway Auth.*, 896 P.2d 859 (Colo.1995); *see also Omnibank Parker Rd., N.A. v. Employers Ins. of Wausau*, 961 F.2d 1521, 1523 (10th Cir.1992) ("Unambiguous contract provisions must be construed to give effect to their plain meaning."); *Cache Nat'l Bank*, 882 P.2d at 957. However, "[i]f the court determines a contract is ambiguous and its construction depends on extrinsic evidence, then the interpretation of the contract becomes a question of fact." *Stegall v. Little Johnson Assocs., Ltd.*, 996 F.2d 1043, 1048 (10th Cir.1993) (citations omitted).

■ Whether a contract term is ambiguous is a question of law. *Smalley & Co.*, 808 F.Supp. at 1514; *Fibreglas Fabricators, Inc.*, 799 P.2d at 374. "Under Colorado law, to determine if a particular term is ambiguous, 'the language of the agreement must be constructed by application of the accepted meaning of the words with reference to all of its provisions. The

nature of the transaction which forms the contract subject matter must also be considered.'" *Stegall*, 996 F.2d at 1048 (quoting *In re Marriage of Thomason*, 802 P.2d 1189, 1190 [Colo. Ct.App.1990]). "Contractual terms are not rendered ambiguous merely because the parties subsequently urge diverse interpretations." *Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.*, 917 F.2d 1239, 1246–47 (10th Cir.1990). Rather, a contract is ambiguous where the text of the agreement reasonably allows for varying interpretations. Unless there is an ambiguity in its terms, a court should avoid strained interpretations, give effect to the terms according to their ordinary meaning, and enforce the contract as written. *State Farm Mut. Auto. Ins. Co. v. Graham*, 860 P.2d 566, 568 (Colo.Ct.App.1993) (citations omitted). "Construction of a contract should be reasonable and not lead to an absurd result." *Engineered Data Prods., Inc.*, 849 F.Supp. at 1417 (citations omitted).

■ In interpreting a contract, a court should admit parole evidence only when the contract is so ambiguous that the parties' intent is unclear. *Boyer v. Karakehian*, 915 P.2d 1295, 1299 (Colo.1996) (citations omitted). Although parole evidence may be considered by the court to determine if a contract is ambiguous, if after hearing the evidence the contract remains unambiguous the parole evidence should be stricken. *Magnetic Copy Servs., Inc. v. Seismic Specialists, Inc.*, 805 P.2d 1161, 1164 (Colo.App.1990) (citations omitted). Absent allegations of fraud, accident, or mistake in the formation of the contract, parole evidence may not be admitted to add to, subtract from, vary, or contradict, change, or modify an unambiguous integrated contract. *Id.* (citations omitted); *Nelson v. Elway*, 908 P.2d 102, 107 (Colo.1995) ("[T]he terms of a contract

intended to represent a final and complete integration of the agreement between are enforceable, and extrinsic evidence offered to prove the existence of prior agreements is inadmissible."). Even when parole evidence is admissible to ascertain the intent of the parties, it may not be used to demonstrate an intent that contradicts or adds to the intent expressed in the writing. *Nelson,* 908 P.2d at 107 (citing *KN Energy, Inc. v. Great W. Sugar Co.,* 698 P.2d 769, 777 n. 9 [Colo. 1985]). The parole evidence rule, however, does not bar the admission of oral representations which are not inconsistent with the terms of the final written agreement and are not of the type one would necessarily expect to be incorporated into the final agreement. *Boyer,* 915 P.2d at 1299 (citations omitted).

In its extensive summary-judgment order, the bankruptcy court applied the foregoing principles and concluded that the plain language of the Contract and Addendum was clear and unambiguous and that the Contract required Parsons to transfer all of his interest in the Upper Ranch without any reservation or grants of either an option to repurchase water rights, a right to run cattle on the Upper Ranch during Parsons' lifetime, or, most importantly, a right to repurchase the Upper Ranch. (R., Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 15 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998)].) Likewise, the bankruptcy court concluded that the unambiguous language of the five-year redemption provision the Addendum applied only to the Remaining Property and by definition did not include the Upper Ranch. (*Id.,* Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 15–16 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998)].) The bankruptcy court also concluded that the alleged oral promises made by Kennedy would add to, modify, and contradict the unambiguous written terms of the Contract and the Addendum. (*Id.,* Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 17 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998)].) The bankruptcy court found that there had been no fraud, accident, or mistake in the formation of the Contract and Addendum, and that the integration clause contained in the Contract was clear and unambiguous on its face. (*Id.,* Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 17 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998)].) In sum, the bankruptcy court found that Parsons had failed to establish a "legitimate legal basis justifying the admission of parole evidence in this case to vary the terms of the Contract and Addendum." (*Id.,* Vol. III, Doc. 162 [Order Granting in Part and Denying in Part Kennedy's Mot. for Summ. J. at 18 (filed in Bankr.Ct. D. Colo. Jan. 9, 1998)].)

After a careful review of all the materials in the record, I wholly agree with the bankruptcy court's conclusion that Parsons failed to establish a legitimate legal basis for the admission of parole evidence. Like the bankruptcy court, I find that Parsons' proffered parole evidence would, without doubt, add to, modify, vary, and contradict the clear and unambiguous written terms in the fully integrated Contract and Addendum. I further find that the oral promises and/or representations alleged by Parsons are the type of oral promises and/or representations that, if made, one would expect would be incorporated into the final written agreement. *Boyer,* 915 P.2d at 1299. Thus, because I find that the bankruptcy court correctly applied Colorado law, I see no need to add anything to the bankruptcy court's detailed and well-reasoned analysis. I therefore affirm the bankruptcy court's findings for substantially the same reasons set forth in

the bankruptcy court's January 8, 1998, order granting Kennedy' motion for summary judgment.

### 5. Award of Attorney Fees and Costs to the Trustee

In his final challenge to the bankruptcy court proceedings, Parsons claims that the bankruptcy court erred when it awarded the Trustee attorney fees and costs incurred as a result of the interpleader action. More specifically, Parsons claims that the bankruptcy court erred when it: (1) awarded the Trustee $5,873.56 in fees pursuant to 11 U.S.C.A. § 330(a) for administering the escrow funds during the interpleader action; and (2) entered judgment against Parsons for attorney fees and costs incurred by the Trustee in litigating the interpleader action. (Parsons' Br. at 24–26.) I address each of these allegations of error in turn.

#### a. Award of Fees Under 11 U.S.C.A. § 330(a)

Section 330(a) of the Bankruptcy Code authorizes the bankruptcy court to award "reasonable compensation for actual, necessary services rendered by the trustee . . . ." 11 U.S.C.A. § 330(a)(1)(A). Factors the bankruptcy court considers in determining the amount of reasonable compensation include: (1) the time spent by the trustee on such services; (2) the rate charged by the trustee; (3) whether the services were necessary or beneficial to the administration of the bankruptcy estate; (4) whether the trustee performed the services within a reasonable amount of time; and (5) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in similar non-bankruptcy cases. *Id.* § 330(a)(3)(A)-(E). On December 9, 1999, the bankruptcy court held a hearing on the Trustee's application for compensation, pursuant to 11 U.S.C.A. § 330(a). The bankruptcy court evaluated the Trustee's request under the factors enumerated in 11 U.S.C.A. § 330(a)(1)(A)-(E) and, over Parsons' objection, concluded that the services and provided by the Trustee were necessary and that an award of $5,873.56 would be reasonable under the circumstances. (R., Vol. XVII [Partial Tr. of Dec. 9, 1999, at 7–10].)

■ Parsons first argues that the bankruptcy court erred in awarding the Trustee compensation because an application for compensation in an adversary proceeding is inappropriate insofar as "[b]ankruptcy [r]ules and standards are not applicable in an adversary proceeding." (Parsons' Br. at 24–25.) I reject this argument. Parsons is only marginally correct in his assertion that the bankruptcy rules and standards do not apply to adversary proceedings. While rule 7001 of the Federal Rules of Bankruptcy Procedure provides that "an adversary is governed by the rules this Part VII," this simply means that the Federal Rules of Civil Procedure, as incorporated in the Federal Rules of Bankruptcy Procedure, govern the procedural aspects of adversary proceedings. Fed. R. Bankr.P. 7001, advisory committee notes. There is nothing in rule 7001 or any other bankruptcy rule that precludes the award of compensation to the Trustee for services rendered in connection with an adversary proceeding under 11 U.S.C.A. § 330(a) so long as the services rendered otherwise comply with the requirements of 11 U.S.C.A. § 330(a). Parsons, moreover, has cited no legal authority in support of his position that 11 U.S.C.A. § 330(a) is an improper means of compensating the Trustee for services rendered during the adversary proceeding.

■ Alternatively, Parsons argues that, even if the Trustee's application for

compensation was appropriate, the Trustee's application did not comply with the Federal Rule of Bankruptcy Procedure 2016 and therefore should have been denied. (Parsons' Br. at 25.) I reject this argument as well. Rule 2016 governs applications for compensation under 11 U.S.C.A. § 330(a) and requires the Trustee to make a detailed application stating, *inter alia,* "(1) the services rendered, time expended and expenses incurred, and (2) the amounts requested," as well as detailing, among other things, any previous payments received, any agreement for future compensation, and the source of these payments. Fed. R. Bankr.P.2016(a). During the December 9, 1999, hearing, the bankruptcy court addressed the specific deficiencies in the Trustee's application raised by Parsons. The bankruptcy court found that: (1) the Trustee's failure to keep contemporaneous time records was not fatal to his application for compensation so long as there was a sufficient basis in the record from which the bankruptcy court could determine the necessity and reasonableness of the Trustee's services; and (2) contrary to Parsons' assertion, the Trustee was not sharing his fees as a trustee with anyone; and (3) the remaining requirements of rule 2016 were met through other documents contained in the record. (R., Vol. XVII [Partial Tr. of Dec. 9, 1999, at 4–5].) Other than conclusory arguments on appeal that the Trustee's application should have been denied, Parsons does not point to any specific evidence in the record that would undermine the bankruptcy court's findings concerning the Trustee's compliance with rule 2016 or the bankruptcy court's conclusion that the Trustee was entitled to compensation under 11 U.S.C.A. § 330(a). Accordingly, I affirm the bankruptcy court's award of $6,873.56 to the Trustee as compensation under 11 U.S.C.A. § 330(a).

### b. Award of Trustee's Attorney Fees and Costs

On July 19, 1999, the bankruptcy court entered judgment against Parsons and in favor of the Trustee for $46,086.15 in attorney fees and costs incurred by the Trustee in litigating the interpleader action. (R., Vol. VI, Doc. 294 [J. (filed in Bankr.Ct. D. Colo. July 19, 1999) ].) Parsons argues that it was reversible error for the bankruptcy court to award the Trustee his attorney fees and costs incurred in the interpleader action because the bankruptcy court was not authorized to enter such an award. (Parsons' Br. at 24–25.) Parsons also argues that the Addendum limited the Trustee's recovery of attorney fees and costs to $3000. (*Id.* at 26.)

A bankruptcy court may award attorney fees and costs where there is a specific statutory or contractual basis authorizing such an award. *Republic Bank v. Smith (In re Smith),* 72 B.R. 300, 301 (Bankr.M.D.Fla.1987). In this case, the bankruptcy court found that the Contract, Addendum, and Escrow Agreement authorized it to award the Trustee his attorney fees and costs incurred in litigating the interpleader action, including attorney fees and costs for defending against Parsons' counterclaim. The bankruptcy court based its award of attorney fees and costs to the Trustee on: (1) the plain language of the Contract, Addendum, and Escrow Agreement; (2) the bankruptcy court's earlier finding that the Trustee was the prevailing party in the interpleader action and Parsons' counterclaim; and (3) the bankruptcy court's finding that Parsons' failure to file his 1995 tax returns precipitated the need for the Trustee to commence the interpleader action; and (4) the bankruptcy court's finding that the interpleader action and Parsons' counterclaim were inextricably intertwined. (R., Vol. VI, Doc. 293 [Order on Award of Fees and

Costs at 2 (filed in Bankr.Ct. D. Colo. July 19, 1999)].)

Upon review of the relevant provisions of the Contract, Addendum, and Escrow Agreement, I find no merit to Parsons' contention that the bankruptcy court was without authority to award the Trustee attorney fees and costs. Nor do I find any merit to Parsons' contention that the Addendum limited the Trustee's recovery to $3000. Paragraph 16(c) of the Contract provided that "in the event of any litigation or arbitration arising out of this Contract, the Court shall award to the prevailing party all reasonable costs and expense, including attorneys; fees." Paragraph 23(k) of the Addendum provided that the Trustee may "recover court costs and its [sic] reasonable attorneys' fees" incurred in interpleading the escrowed funds. Finally, paragraph 11 of the Escrow Agreement provided that the "costs of [the interpleader action] shall be borne by the party causing the uncertainty ...."[5] As explained above, a written contract which is complete and free from ambiguity represents the objective intent of the parties and will be enforced according to its plain language. *See In re May*, 756 P.2d 362, 369 (Colo.1988). Because there is nothing ambiguous about the foregoing provisions, I find that the bankruptcy court properly concluded that the plain language of the Contract, Addendum, and Escrow Agreement authorized the award of attorney fees and costs incurred by the Trustee. Moreover, because Parsons does not challenge the bankruptcy court's factual findings underlying the award of attorney fees and costs to the Trustee—e.g. the Trustee's status as the prevailing party, the bankruptcy court's finding that the interpleader action and Parsons' counterclaim were inextricably intertwined, and the bankruptcy court's finding that Parsons' failure to file his 1995 tax returns necessitated the interpleader action—I affirm the bankruptcy court's entry of judgment against Parsons and in favor of the Trustee for $46,086.15 in attorney fees and costs incurred by the Trustee in litigating the interpleader action.

## 6. Kennedy's Request for Damages and Costs Based on Parsons' Frivolous Appeal

■■■ As a final matter, I address Kennedy's request for the damages and costs against Parsons pursuant to rule 8020 of the Federal Rules of Bankruptcy Procedure. (*See* Kennedy's Resp. at 19, 24.) Rule 8020 provides that:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, *after a separately filed motion* or notice from the district court or bankruptcy appellate panel and reasonable opportu-

---

5. Parsons argued to the bankruptcy court that he was not bound by the Escrow Agreement because he was a signatory to the Escrow Agreement. The bankruptcy court rejected Parsons' argument, finding that paragraph 23(h) of the Addendum specifically provided that an escrow agreement between the Trustee and Kennedy would be executed and thus Parsons could not be heard to complain that he was not bound by the Escrow Agreement. (R. Vol. VI, Doc. 292 [Order and J. on the Following Matters Which Were Ruled Upon on the Record at the Hearing on Apr. 20, 1999,: (1) Jurisdiction; (2) Disposition of "Net Proceeds;" and (3) Miscellaneous Other Objections at 4 (filed in Bankr.Ct. D. Colo. July 19, 1999)].) Parsons does not appeal from the bankruptcy court's ruling that he is bound by the terms of the Escrow Agreement. Even if he were to appeal the bankruptcy court's ruling, I find that the provisions in the Contract and Addendum regarding attorney fees and costs are sufficient to uphold the bankruptcy court's award of attorney fees and costs to the Trustee.

nity to respond, award just damages and single or double costs to the appellee.

Fed. R. Bankr.P. 8020 (emphasis supplied). Kennedy did not file a separate a motion as required by rule 8020, but rather included his rule 8020 for damages and costs in response brief. Consequently, Kennedy's request for damages and costs is not properly before this court. Even if Kennedy's request was properly before the court, I do not believe that Parsons' appeal warrants the award of damages and costs. While Parsons' arguments lack merit (some much more so than others), they do not, on balance, rise to the level of frivolous. Accordingly, Kennedy's request for damages and costs is denied.

### 7. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

1. The bankruptcy court's January 25, 2000, final judgment is AFFIRMED in all respects.

2. Kennedy's request for an award of damages and costs under rule 8020 of the Federal Rules of Bankruptcy Procedure is DENIED.